**STANLEY WARNER CORPORATION,**
**Employer-Appellant,**

**v.**

**Herbert SLATTERY, Employee-Appellee.**

Superior Court of Delaware,
New Castle.

Nov. 8, 1967.

William F. Taylor, Wilmington, for appellant.

Herbert Slattery, pro se.

OPINION

O'HORA, Justice.

Respondent-appellant [the employer] is here appealing from a finding by the Industrial Accident Board that the Claimant-appellee [the employee] was entitled to compensation.

For many years prior to 1966, claimant held two jobs simultaneously. During normal daytime hours he worked as a cashier for a local stockbroker firm, while at night he worked for the respondent as a maintenance man at a downtown theater. The nighttime job required manual labor activities, such as heavy lifting, climbing ladders to repair and change the marquee, and stooping to repair the seats in the theater. On the other hand, the daytime job is largely sedentary and involves little or no physical exertion.

On June 7, 1966, claimant suffered a back injury in the course of his nighttime employment at the theater. According to medical testimony at the hearing before the Board the injury disabled claimant from activity involving heavy lifting and climbing. As a result of his injuries claimant was unable to continue his nighttime job. His injury, however, did not affect his ability to perform the clerical activities required in his daytime job. Except for a brief three week interval following the accident, he has continued working in the stockbroker's office on a full time basis.

Claimant received compensation, per agreement with respondent, for temporary total disability from June 7, 1966 until November 11, 1966. Respondent contends that claimant was no longer totally disabled after November 11, 1966, and petitioned the Board to terminate the agreement. After a hearing, the Board denied the petition on the ground that respondent had not met its

burden of proving that claimant was not totally disabled. The correctness of that finding is the issue presented to this Court on appeal.

Although the term "total disability" appears in 19 Del. C. § 2324, it is nowhere defined in the statutory law of this State. Some recent Delaware decisions have, however, dealt with the meaning of the term. Federal Bake Shops v. Maczynski, 4 Storey 484, 54 Del. 484, 180 A.2d 615 (Super.Ct. 1962); M. A. Hartnett, Inc. v. Coleman, Del., 226 A.2d 910 (1967); Ham v. Chrysler Corp., Del., 231 A.2d 258 (1967). Respondent, in fact, contends that these cases establish the principle that a claimant is not totally disabled if he is employable "in any well-known branch of the labor market". In such case, it is argued, total disability compensation must be denied, even if the injury renders the claimant incapable of continuing in the same line of work. Respondent concludes, therefore, that it has met its burden of proof, in view of the admitted continuance by claimant of his daytime job on a full time basis. Fifteen years on that job, respondent urges, is convincing evidence that claimant need not be specially trained for it now, and he is obviously able to compete successfully in the open employment market.

An examination of the language used as related to the specific fact situations in the Delaware cases cited does not completely support respondent's argument. In the *Maczynski* case the claimant held a job which required her to immerse her hands in water for long periods. As a result she contracted a form of dermatitis and was unable to work in any job requiring sustained immersion of her hands. There was no evidence, however, that she was unable to obtain employment in other job areas, or even in the same area, as long as she would not have to immerse her hands for long periods. On these facts the Court found the claimant not "totally disabled", commenting, as follows:

"[T]he better view followed in the vast majority of jurisdictions is that 'total disability' or similar language in workmen's compensation statutes refers to a disability which prevents claimant from obtaining any other employment commensurate with the claimant's qualifications and training, rather than inability to continue in the same employment or the same line of work."

*Maczynski* was cited by the Delaware Supreme Court with approval in M. A. Hartnett, Inc. v. Coleman (supra). In *Hartnett* the claimant was an illiterate laborer, capable only of employment involving manual labor. His injury left him unable to bend, stretch, lift, stand or sit for long in one position. The claimant's disability prevented him from "obtaining employment commensurate with his qualifications and training", said the Court, in finding him totally disabled.

In Ham v. Chrysler Corp. (supra), the Supreme Court on similar facts as here further elaborated this doctrine. It defined a "totally disabled" person, when applying the so-called "odd lot" doctrine, as one,

"* * * while not completely incapacitated for work, is so handicapped by compensable injury that he will no longer be employed regularly and in any well known branch of the competitive labor market and will require a specially created job if he is to be steadily employed * * * we choose to refer to such a worker * * * as one 'displaced' from the regular labor market."

Had claimant worked at the nighttime job alone, and obtained the daytime job after the injury, the above cases might well support respondent's position. However, the situation involving an employee with one job, who loses it because of a compensable injury, differs from the situation in which the employee has two regular jobs and loses one.

The basic purpose of total disability compensation is to compensate for loss of

earning capacity. 11 Schneider, Workmen's Compensation Text, (1957) § 2302, § 2311. Schneider elaborates this concept further in § 2307 with language reminiscent of that used in the *Ham* and *Hartnett* cases:

"Total permanent disability does not mean a state of absolute helplessness. It exists when one has a physical defect that makes his labor unsaleable in any market reasonably accessible to him. The test is not what a workman is able to earn, but what his present earning capacity is in the open market, the question being to what extent he is hampered in the open market by reason of the accident."

In terms of earning capacity, if the claimant had held one job, which a compensable injury had caused him to lose, obtaining the daytime job might in itself be proof that earning capacity was not impaired. Where a man has held two jobs and lost one because of an injury, his earning capacity might well be impaired to the extent of his inability to find a substitute job, compatible with his available time and skills. For this reason the case cannot be reversed merely because there is evidence in the same record which establishes that the disabled employee is, in fact, working and earning money. Trinity Universal Ins. Co. v. Scott, 342 S.W.2d 348, 349 (Tex.Civ.App.1961); Dixie Fire and Casualty Co. v. Thompson, 110 Ga.App. 734, 140 S.E.2d 77 (1964).

Although evidence that the claimant has acquired another job at the same wage or one paying higher wages may be relevant in determining the extent of lost earning capacity, such evidence is not conclusive. 11 Schneider, Workmen's Compensation Text, (1957), § 2305. Evidence as to the availability of comparable nighttime jobs, either clerical or light manual, is essential to a proper conclusion on the issue herein presented. If such jobs are readily available to the claimant, then the Board cannot find claimant "totally disabled". If such nighttime work is found to be generally unavailable, then the claimant might be found "totally disabled" to the extent of lost earning capacity. The evidence presented and received at the hearing before the Board was not directed to this problem. Inasmuch as this Court views this to be the real crux of the matter, under the law, the case should be remanded for a further hearing directed to the points indicated herein, with the Board making further findings based upon the entire record at that time.

It is so ordered.