41138. MILLER, Guardian v. TRAVELERS INSURANCE COMPANY et al.

246

DECIDED FEBRUARY 25, 1965.

*Durden & Durden, A. N. Durden,* for plaintiff in error.
*Perry, Walters & Langstaff, Jesse W. Walters,* contra.

HALL, Judge. ■ The award of the hearing director stated that he found that there was no "competent positive, relative, legal or medical evidence" to support a finding that claimant's mentally disturbed condition arose out of and in the course of his employment. The claimant testified that he had been unable to work since he became ill on the job on a Saturday. Testimony of physicians showed that they saw him on the following Monday and he had nausea, vomiting, diarrhea, fever, and was mentally disturbed and was locked up that night, and that two days thereafter he was completely irrational and was committed to a mental hospital. The claimant's wife testified that the claimant took sick with an upset stomach and from that went into the mental disturbance. The claimant and his wife testified that he had never had any mental disturbance before. There was medical evidence that would support a finding that the claimant was exposed to parathion in his employment and was poisoned by it. One physician testified that in his professional opinion parathion poisoning could not produce or cause mental disorders. Another

physician testified that in his opinion based upon the medical articles he had read parathion poisoning could produce or cause the claimant's mental disorder, including acute psychosis. On cross examination, this physician testified that all he knew was hearsay; that his opinion on parathion poisoning was based purely on what he had been able to read; that it was not speculation because it is a matter of record in medical literature; and finally, upon being asked again whether the statement that the claimant's mental condition was caused from parathion poisoning was a matter of speculation, he replied "Oh, yes, that would have to be, there is no way anybody could prove whether it was or wasn't."

Whether a physician's testimony has probative value is for the trior of the facts rather than for the witness himself. Accord *Glover v. State,* 129 Ga. 717 (9) (59 SE 816). "Every expert derives much of his knowledge from books as well as from experience, and can give his opinion based upon the knowledge acquired from both sources." *Central R. Co. v. Mitchell,* 63 Ga. 173, 181. Expert opinion is admissible even where in reaching his opinion the expert "derived all his knowledge on the subject from reading medical authorities." *Mayor &c. of Jackson v. Boone,* 93 Ga. 662 (1) (20 SE 46); *Boswell v. State,* 114 Ga. 40 (3) (39 SE 897).

"The deputy director, as the trior of facts, is not bound to accept the opinion or theory of any particular medical witness; and a jury is not bound by the opinions of expert witnesses." *Thomas v. U. S. Cas. Co.,* 218 Ga. 493 (3) (128 SE2d 749). Where, as in this case, there was testimony of non-expert witnesses furnishing proof of facts and circumstances from which it may be reasonably inferred that the exposure of the claimant to parathion in the course of his employment resulted in his mental disorder and there is conflicting testimony of experts on whether this exposure may have caused the injury, it is a question of fact for the determination of the board as to which conclusion is correct. *Thomas v. U. S. Cas. Co.,* 218 Ga. 493 (3), supra.

"If an award of the State Board of Workmen's Compensation is authorized by any competent evidence, it must be affirmed

even if the board or hearing director considered illegal evidence or assigned erroneous reasons for the award, provided that the award was not based upon an erroneous legal theory which precluded the consideration by the board or hearing director of evidence which, if the same had been considered, would have authorized a contrary result." *Fidelity &c. Co. v. Hodges,* 108 Ga. App. 474 (1) (133 SE2d 406). However, where it affirmatively appears that the award is based upon an erroneous legal theory, and that for this reason the board has not considered all of the evidence in the light of correct and applicable legal principles, the case should be remanded to the board for further findings. *Barbree v. Shelby Mutual Ins. Co.,* 105 Ga. App. 186 (123 SE2d 905).

Considering the opinion of the physician based on his information from medical literature that the claimant's mental condition could be caused by parathion poisoning, together with the other evidence before the board, there was sufficient evidence to support an award for the claimant. The award, stating as its basis that there was no such evidence, shows that it is based on an erroneous legal theory.

■ The claimant contends (and evidence was presented) that parathion is a derivate of benzene; that the mental disorder allegedly caused by the parathion poisoning was an occupational disease; and that the board erred in not referring the case to the medical board for investigation and report. Poisoning from benzene is listed as an occupational disease in the Georgia statute. *Code Ann.* § 114-803.

"Definitions of 'occupational disease' should always be checked against the purpose for which they were uttered." 1 Larson's Workmen's Compensation Law 599, § 41.31. With the expansion of occupational disease legislation throughout the United States, the "contrast between accident and occupational disease is gradually losing its importance." 1 Larson's Workmen's Compensation Law 600, § 41.31. Prior decisions of this court (*Lumbermen's Mutual Cas. Co. v. Lynch,* 63 Ga. App. 530, 11 SE2d 699; *Martin v. Tubize-Chatillon Corp.,* 66 Ga. App. 481, 17 SE2d 915) defining "occupational disease" were decided at a time when Georgia had not adopted an occupational disease

statute. Ga. L. 1946, p. 103. The definition stated in these cases, "a diseased condition arising gradually from the character of the work in which the employee is engaged, that is, a disease acquired in the usual and ordinary course of an employment which from common experience is recognized to be incidental thereto," has been supplanted by statutory language that the disease must be "due to causes and conditions which are characteristic of and peculiar to the particular trade, occupation, process or employment. . ." *Code Ann.* § 114-803.

The Georgia occupational disease statute provides: "In any claim for compensation for an occupational disease where medical questions shall be in controversy, the State Board of Workmen's Compensation shall refer the case to the Medical Board for investigation and report. No award shall be made in such case until the Medical Board shall have duly investigated the case and made its report with respect to all medical questions at issue." *Code Ann.* § 114-819. "Its mandate is explicit. Where upon the hearing of a workmen's compensation case as to whether the claimant is affected with an occupational disease, or to what extent he is disabled by such disease, the issue must be referred by the Workmen's Compensation Board to the medical board. The compensation board's only jurisdiction is then to enter an award in conformity to the finding of the medical board. The parties could not by submitting the controversy to the Workmen's Compensation Board confer jurisdiction upon that tribunal." *Griffith v. Employers Mut. Liab. Ins. Co.,* 100 Ga. App. 157, 159 (110 SE2d 539).

Since it affirmatively appears that the award of the deputy director and the award of the board were based upon an erroneous legal theory, the judgment of the superior court affirming the award of the Workmen's Compensation Board is reversed with direction that the case be remanded to the board for action in accordance with what is stated in this opinion.

*Judgment reversed with direction. Bell, P. J., and Frankum, J., concur.*